## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| **ALICIA SIGALA, on behalf of herself, and as a representative of a class of participants and beneficiaries and on behalf of the CommonSpirit Health 401(k) Retirement Savings Plan,** | **CIVIL ACTION NO:** |
| **Plaintiff,** | |
| **v.** | **JURY TRIAL DEMANDED** |
| **COMMONSPIRIT HEALTH, COMMONSPIRIT HEALTH RETIREMENT PLANS SUB-COMMITTEE, COMMONSPIRIT HEALTH'S HUMAN RESOURCES AND COMPENSATION COMMITTEE, THE BOARD OF STEWARDSHIP TRUSTEES OF COMMONSPIRIT HEALTH, JOHN AND JANE DOES 1-30,** | |
| **Defendants.** | |

## CLASS ACTION COMPLAINT

## I.    INTRODUCTION

1.      Plaintiff Alicia Sigala ("Plaintiff") on behalf of herself, and as a representative of

the class, and on behalf of the CommonSpirit Health 401(k) Retirement Savings Plan[1] (the "Plan")

brings this action under 29 U.S.C. §§ 1132(a) (2) & (3) against the Plan's fiduciaries, which

---

[1] Prior to 2022 the name of the plan was Catholic health Initiatives 401(k) Plan.

include (1) CommonSpirit Health ("CommonSpirit" or the "Company"); (2) the CommonSpirit Health Retirement Plans Sub-Committee, and the CommonSpirit Health's Human Resources and Compensation Committee (the "Committees") (3) the Board of Stewardship Trustees of CommonSpirit and its members during the Class Period[2] (the "Board"); and (4) John and Jane Does 1–30 (the "Members") (collectively, the Company, the Board, the Committees, and the Members shall be referred to as the "Defendants"), for (1) breach of ERISA's fiduciary duties; (2) violation of ERISA's anti-inurement provision, and (3) engaging in self-dealing and transactions prohibited by ERISA.

2.    The Plan is a defined contribution, individual account, employee pension benefit plan under 29 U.S.C. § 1002(2)(A) and § 1002(34) and is subject to the provisions of ERISA pursuant to 29 U.S.C. § 1003(a).

3.    Defendants' breaches of ERISA as alleged herein each arise from Defendants' disloyalty and imprudent process for allocating and exhausting forfeited Plan funds. Defendants failed to put in place and or follow prudent processes to allocate forfeited funds timely, prudently, and loyally. As a result, Defendants consistently chose to allocate Plan participant's forfeited funds without considering what would be in the Plan participant's best interest and in violation of the Plan document almost exclusively to reduce Company contributions to the Plan, when in many occasion these funds would have benefitted Plan participants more if they were applied to reduce or eliminate the amounts charged to Plan participants as administrative expenses. In that same vein, Defendants also failed to promptly exhaust millions of dollars of forfeitures, instead choosing to leave millions of dollars of forfeited Plan funds untouched rather than using them to reduce

---

[2] The Class Period is defined as January 1, 2019, through the date of judgment.

administrative expenses or otherwise to benefit the Plan participants. Absent imprudent process or disloyalty these decisions would not have occurred.

4.      These choices by Defendants have cost Plan participants millions of dollars during the Class Period, including Plaintiff.

## II.    JURISDICTION AND VENUE

5.      This Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, ERISA Section 502(a), pursuant to 29 U.S.C. § 1132.

6.      This Court has personal jurisdiction over Defendants because they transact business in this District, reside in this District, and/or have significant contacts with this District, and because ERISA provides for nationwide service of process.

7.      Venue lies in this district pursuant to 29 U.S.C. § 1132(e)(2) and 29 U.S.C. § 1132(e)(2), because some or all of the violations of ERISA occurred in this District and Defendants reside and may be found in this District.  Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do business in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## III.    THE PARTIES

### A. Defendants

8.      At all relevant times, Defendant CommonSpirit was the sponsor of the Plan in Erlanger, Kentucky, and is one of the world's largest healthcare services providers with over 175,000 employees.

9.      At all relevant times, the Committees were the Plan administrators per ERISA § 3(16), 29 U.S.C. § 1002(16); a party in interest under ERISA § 3(14)(A), 29 U.S.C.

§ 1002(14)(A); and Plan fiduciaries under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), to the extent that they had or exercised discretion over the administration or management of the Plan and/or control of Plan assets, as well as being named as fiduciaries within the governing Plan documents.

10.    At all relevant times, the Board was a party in interest under ERISA § 3(14)(C), 29 U.S.C. § 1002(14)(C); and a Plan fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), to the extent that it appointed members of the Committee and otherwise exercised discretion over the administration and management of the Plan and/or control of Plan assets.

11.    To the extent that there are additional officers, investment managers, employees and/or contractors of the Company who are/were fiduciaries of the Plan during the Class Period, or were hired as an investment manager for the Plan during the Class Period, the identities of whom are currently unknown to Plaintiff, Plaintiff reserve the right, once their identities are ascertained, to seek leave to join them to the instant action. Thus, without limitation, unknown Doe Defendants 21-30 include, but are not limited to, Company officers, Plan Investment Managers, employees and/or contractors who are/were fiduciaries of the Plan within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A) during the Class Period.

**B.  Plaintiff**

12.    At all relevant times, Plaintiff Alicia Sigala, by virtue of her employment with CommonSpirit and participation in the Plan through the relevant time period, is or may become eligible to receive additional benefits under the Plan as a result of Defendants' breaches of fiduciary duty and ERISA violations. Thus, Plaintiff Alicia Sigala is a participant as defined by ERISA § 3(7), 29 U.S.C. § 1002(7).

13.     During Plaintiff's employment, Plaintiff participated in the Plan paying the administrative expenses associated with the Plan. Plaintiff suffered injury to Plaintiff's Plan account due to the fact that Defendants failed to use additional forfeited Plan funds to pay Plan administrative expenses which, if used to pay for administrative expenses , would have reduced or eliminated the amounts charged to Plaintiff's individual account to pay for the administrative expenses. Plaintiff also suffered injury due to Defendants' failure to promptly exhaust millions of dollars of forfeitures.

14.     As a Plan participant and holder of the disputed funds, Plaintiff has standing to bring claims on behalf of the Plan pursuant to 29 U.S.C. §1132(a)(2), as Plaintiff is a participant seeking appropriate relief under 29 U.S.C. § 1109.

15.     Plaintiff has standing to bring claims on behalf of all holders of the disputed funds in the Plan because Plaintiff participated in the Plan and was injured by Defendants' unlawful conduct.  Plaintiff is entitled to receive benefits in the amount of the difference between the value of what Plaintiff's account is or would have been worth, but for Defendants' breaches of ERISA as described herein.

16.     Plaintiff did not have knowledge of all material facts necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA until shortly before this suit was filed.

## IV.    DEFENDANTS' FIDUCIARY DUTIES

17.     ERISA imposes strict fiduciary duties upon the Defendants as fiduciaries of the Plan, the duty of prudence, the duty of loyalty, anti-inurement, duty to defray expenses, and the requirement to refrain from prohibited transactions. These duties apply to all fiduciary acts, including the Defendants' allocation of forfeitures.

18. ERISA's duty of prudence requires fiduciaries to discharge their responsibilities "with the care, skill, prudence, and diligence" that a prudent person "acting in a like capacity and familiar with such matters would use." 29 U.S.C. §1104(a)(1)(B). Accordingly, fiduciaries must vigorously and independently investigate allocation of forfeitures with the skill of a prudent person acting in a like capacity and familiar with such matters.

19. Under ERISA's duty of loyalty, Plan fiduciaries must exercise their discretion "**solely in the interest of the participants and beneficiaries**" and "for the exclusive purpose" of "providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1) (emphasis added). This requires Plan fiduciaries to act with an "eye single" to the interests of Plan participants and beneficiaries and to "exclude all selfish interest and all consideration of the interests of third persons." *Pegram v. Herdrich*, 530 U.S. 211, 224 (2000) (citation omitted). Fiduciaries violate that duty when they make decisions even in part to benefit themselves or third parties.

20. ERISA further "supplements the fiduciaries' general duty of loyalty to the Plan's beneficiaries . . . by categorically barring certain transactions deemed 'likely to injure the pension plan." *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc*., 530 U.S. 238, 241-42 (2000); *Cunningham v. Cornell Univ*., 145 S. Ct. 1020 (2025). Among these prohibited transactions, a fiduciary "shall not cause the plan to engage in a transaction" if the fiduciary "knows or should know" that it constitutes a "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan" (29 U.S.C. § 1106(a)(1)(D)) and may not "deal with the assets of the plan in his own interest or for his own account" (29 U.S.C. § 1106(b)(1)).

21. ERISA also imposes explicit co-fiduciary liabilities on plan fiduciaries. 29 U.S.C. § 1105(a), titled "Circumstances Giving Rise to Liability", provides a cause of action against a fiduciary for knowingly participating in a breach by another fiduciary and knowingly failing to

cure any breach of duty. The statute states, in relevant part, that: "[i]n addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or (2) if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give risk to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

22.    Under 29 U.S.C. § 1132(a)(2), a plan participant is authorized to bring a civil action to enforce a breaching fiduciary's liability to the plan under 29 U.S.C. § 1109. Section 1109(a) provides in relevant part: "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

## V.    FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

23.    As required by 29 U.S.C. § 1102(a)(1), the Plan is maintained under a written document.  During the relevant time period, different versions of the plan document governed the Plan at different time frames.

24.     In accordance with 29 U.S.C. § 1103(a), the assets of the Plan are held in a trust fund.

25.     The Plan is funded by a combination of wage withholdings by Plan participants and Company contributions, both of which are deposited into the Plan's trust fund.  For each year of the class period, the Company made matching contributions of a participant's compensation contributed to the Plan, subject to the yearly annual limit.

26.     Upon their deposit into the Plan's trust fund, all participant contributions and Company contributions become assets of the Plan.

27.     As an individual account, defined contribution retirement plan, the Plan "provides for an individual account for each participant and for benefits solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeiture of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34).

28.     Substantially all expenses incurred for administering the Plan are paid by the Plan with Plan assets. Upon information and belief, throughout the Class Period, the annual administrative expenses have ranged from approximately $3,469,069 to $4,140,565 per year.

29.     Participant accounts are each charged with substantially all of the expenses paid by the Plan. Throughout the Class Period, all participant accounts have been charged with administrative expenses on a regular basis. The deduction of administrative expenses from participant accounts reduces the funds available to participants for distribution and/or investing and therefore reduces long term growth.

30.     Participants in the Plan are immediately vested in their own contributions, along with any income or losses on those balances. The Company's contributions, plus any income or

losses on those balances, are subject to a three-year cliff vesting schedule. If the participant provided less than one year of service, none of the Company contributions are vested.

31.     Nonvested Company's contributions in a participant's individual account are forfeited and Defendants exercise discretionary authority and control over how these Plan assets are thereafter reallocated.  Throughout the Class Period, Defendants failed to prudently and loyally exercise such discretionary authority and control by failing to: (1) follow the Plan document; (2) implement and apply a prudent process for allocation of forfeited funds; and (3) promptly exhaust forfeited funds.

32.     The Plan instructs forfeitures to be used *first* to pay administrative expenses, and only *then* to reduce employer contributions. The fiduciaries are tasked to allocate the forfeited funds between the options and to follow the Plan order of prioritizing administrative expenses first.

33.     A prudent and loyal fiduciary acting exclusively in the best interest of the participants would not disobey the Plan document and choose to prioritize offsetting Company contributions over offsetting administrative expenses unless there is concern that the Company would otherwise be unable to meet its future contribution obligations.

34.     Furthermore, reducing Administrative expenses is more beneficial to Plan participants so when presented with this choice, a prudent fiduciary would only offset the amount necessary to prevent the Company from being unable to meet its future contributions and then allocate the remaining funds to other more beneficial options, like reducing administrative expenses shouldered by the Plan participants as instructed by the Plan.

35.     Upon information and belief, CommonSpirit was able to meet its future contributions throughout the Class Period and would have been able to meet its contribution obligations each year, even if no forfeitures were applied to offset its contributions.

9

36.    Yet, throughout the class period, Defendants **_exclusively_** applied forfeitures (*i.e.*, plan assets) to offset the *employer's* future contributions first and without weighing the benefits to Plan participants, despite the Plan instructing them to prioritize administrative expenses and owing fiduciary duties to participants.

37.    Defendants' forfeiture allocation decisions, ignoring the Plan document, are consistent with prioritizing the Company's own self-interest.

38.    Defendants failed to properly consider, and/or have prudent processes in place to consider, the best interests of the Plan and its participants.

39.    Throughout the class period, Defendants consistently allocated millions of dollars to offset future Company contributions, while failing to allocate any forfeitures to pay administrative expenses. Defendants' imprudent and disloyal decisions left millions of dollars of unpaid administrative expenses for the participants to pay during each year of the Class Period.

40.    Defendants also declined to allocate additional forfeited funds to the millions of dollars of unpaid administrative expenses even once the Company's contributions were offset, leaving millions of dollars in unused forfeitures during the Clas Period.  Defendants chose to allow millions of dollars to sit unused rather than further offset administrative expenses, despite the Plan prioritizing the payment of administrative expenses with forfeitures.

41.    These facts and actions necessarily require the inference that the Defendants either had no prudent processes in place to discharge of the funds timely or acted disloyally preferring to keep all the forfeiture funds to offset the Company's next year contributions beyond what was necessary.

42.    Defendants thus acted in violation of the Plan document, imprudently, and disloyally by consistently choosing to allocate forfeitures to exclusively offset company

contributions, all while leaving millions of dollars of unallocated forfeiture funds and millions of dollars of administrative expenses for participants to shoulder.

43.    In 2019, Defendants allocated $11,180,483 of forfeiture funds to reduce employer contributions for the year. Upon information and belief, Defendants failed to allocate any forfeiture funds to pay administrative expenses, leaving a year-end balance of $3,469,069 of administrative expenses which was passed on to Plan participants. At year-end, Defendants had $11,123,450 in unused forfeiture funds. As a result of Defendants' failure to promptly exhaust the forfeitures, failure to weigh how to best benefit to the participants in allocating forfeitures, failure to defray expenses, failure to act solely to benefit the Plan participants, and failure to follow the Plan order of prioritizing administrative expenses first, Plan participants lost millions of dollars in lost growth and reduced Plan assets.

44.    A prudent and loyal fiduciary presented with this scenario, would not have applied millions of dollars to offset future company contributions and left millions of dollars unused each year when Plan participants shouldered millions of dollars in administrative expenses. These actions by the fiduciaries necessitate the inference that imprudence or disloyalty was at play in their decision-making process.

45.    In 2020, Defendants allocated $9,977,778 of forfeiture funds to reduce employer contributions for the year. Upon information and belief, Defendants failed to allocate any forfeiture funds to pay administrative expenses for the year, leaving a year-end balance of approximately $3,782,732 of administrative expenses which was passed on to Plan participants. Defendants had $11,435,416 in unused forfeiture funds at year-end. As a result of Defendants' failure to promptly exhaust the forfeitures, failure to weigh how to best benefit to the participants in allocating forfeitures, failure to defray expenses, failure to act solely to benefit the Plan participants, and

failure to follow the Plan order of prioritizing administrative expenses first, Plan participants lost millions of dollars in lost growth and reduced Plan assets.

46.     A prudent and loyal fiduciary presented with this scenario, would not have applied millions of dollars to offset future company contributions and left millions of dollars unused each year when Plan participants shouldered millions of dollars in administrative expenses. These actions by the fiduciaries, at a minimum, necessitate the inference that imprudence or disloyalty was at play in their decision-making process.

47.     In 2021, Defendants allocated $10,133,795 of forfeiture funds to reduce employer contributions for the year. Upon information and belief, Defendants failed to allocate any forfeiture funds to pay administrative expenses for the year, leaving a year-end balance of approximately $3,999,343 of administrative expenses which was passed on to Plan participants. Defendants had $17,009,414 in unused forfeiture funds at year-end.  As a result of Defendants' failure to promptly exhaust the forfeitures, failure to weigh how to best benefit to the participants in allocating forfeitures, failure to defray expenses, failure to act solely to benefit the Plan participants, and failure to follow the Plan order of prioritizing administrative expenses first, Plan participants lost millions of dollars in lost growth and reduced Plan assets.

48.     A prudent and loyal fiduciary presented with this scenario, would not have applied millions of dollars to offset future company contributions and left millions of dollars unused each year when Plan participants shouldered millions of dollars in administrative expenses. These actions by the fiduciaries necessitate the inference that imprudence or disloyalty was at play in their decision-making process.

49.     In 2022, Defendants allocated $15,371,840 of forfeiture funds to reduce employer contributions for the year. Upon information and belief, Defendants failed to allocate any forfeiture

funds to pay administrative expenses for the year, leaving a year-end balance of approximately $4,140,565 of administrative expenses which was passed on to Plan participants. Defendants had $15,387,051 in unused forfeiture funds at year-end. As a result of Defendants' failure to promptly exhaust the forfeitures, failure to weigh how to best benefit to the participants in allocating forfeitures, failure to defray expenses, failure to act solely to benefit the Plan participants, and failure to follow the Plan order of prioritizing administrative expenses first, Plan participants lost millions of dollars in lost growth and reduced Plan assets.

50.     A prudent and loyal fiduciary presented with this scenario, would not have applied millions of dollars to offset future company contributions and left millions of dollars unused each year when Plan participants shouldered millions of dollars in administrative expenses. These actions by the fiduciaries necessitate the inference that imprudence or disloyalty was at play in their decision-making process.

51.     In 2023, Defendants allocated $14,993,539 of forfeiture funds to reduce employer contributions for the year. Upon information and belief, Defendants failed to allocate any forfeiture funds to pay administrative expenses for the year, leaving a year-end balance of approximately $4,077,426 of administrative expenses which was passed on to Plan participants. Defendants had $17,958,697 in unused forfeitures at year-end. As a result of Defendants' failure to promptly exhaust the forfeitures, failure to weigh how to best benefit to the participants in allocating forfeitures, failure to defray expenses, failure to act solely to benefit the Plan participants, and failure to follow the Plan order of prioritizing administrative expenses first, Plan participants lost millions of dollars in lost growth and reduced Plan assets.

52.     A prudent and loyal fiduciary presented with this scenario, would not have applied millions of dollars to offset future company contributions and left millions of dollars unused each

year when Plan participants shouldered millions of dollars in administrative expenses. These actions by the fiduciaries necessitate the inference that imprudence or disloyalty was at play in their decision-making process.

53.     Upon information and belief, these imprudent processes and disloyal practices continued in 2024 and continue to date.

54.     While Defendants' allocation of the forfeitures in the Plan's trust fund exclusively to reduce its future contributions benefitted the Company by reducing its own contribution expenses, it harmed the Plan, along with its participants and beneficiaries, by reducing future Company contributions that would otherwise have increased Plan assets and by causing participants to incur deductions from their individual accounts each year to cover administrative expenses that would otherwise have been covered in whole or in part by utilizing additional forfeited funds for that purpose. Therefore, Defendants' failure to consider the interests of the Plan participants in allocating forfeitures and failure to have processes in place that ensure the Plan document is followed and participants' interests are considered harmed the Plan.

55.     Similarly, Defendants' consistent failure to exhaust forfeitures timely by year-end, harmed the Plan participants. Defendants imprudently left millions of dollars in forfeitures unused by year-end and failed to implement and follow any processes to prevent it.

56.     Using the forfeitures to reduce the Company's contributions is always in the best interest of the Company because that option would decrease its own contribution costs.

57.     Absent any risk that CommonSpirit would be unable to satisfy its contribution obligations, deviating from the Plan document prioritization is not prudent or loyal and using forfeitures to pay administrative expenses would be in the participants' best interest because that

14

option would reduce or eliminate amounts otherwise charged to their accounts to cover such expenses.

58.      In deciding between using forfeitures to benefit CommonSpirit or using forfeitures to benefit the participants, Defendants are presented with a conflict of interest in administering the Plan and managing and disposing of the Plan's assets.

59.      Despite the conflict of interest presented by this decision, and the Plan instructing to prioritize administrative expenses, Defendants failed to undertake any investigation into whether they were following the Plan document and which option was in the best interest of the Plan's participants and beneficiaries.

60.      Defendants did not, for example, investigate whether there was a risk that CommonSpirit would be unable to satisfy its contribution obligations if forfeitures were used to pay administrative expenses as instructed by the Plan, or evaluate whether there were sufficient forfeitures to eliminate the Plan's expenses charged to participants and still offset a portion of the Company's own contribution obligations, as a prudent person would have done.

61.      Defendants also failed to consult with an independent, non-conflicted decisionmaker to advise them in deciding upon the best course of action for allocating the forfeitures in the Plan, as a prudent person would have done.

## VI.    CLASS ACTION ALLEGATIONS

62.      29 U.S.C. §1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. §1109(a).

63.      As an alternative to direct individual actions on behalf of the Plan, Plaintiff seeks to certify this action as a class action on behalf of all participants and beneficiaries of the Plan to

enhance the due process protections of unnamed participants and beneficiaries of the Plan, as an alternative to direct individual actions.

64.     Plaintiff seeks to certify the following class: All participants and beneficiaries of the Plan during the Class Period, excluding: Defendants; any person who was or is an officer, director, employee, or a shareholder of 5% or more of the equity of the Company or is or was a partner, officer, director, or controlling person of the Company, the spouse or children of any individual who is an officer, director or owner of 5% or more of the equity of the Company; Plaintiff's counsel; judges of the Court in which this case is pending and their current spouse and children; and the legal representatives, heirs, successors and assigns of any such excluded person (the "Class").

65.     This action meets the requirements of Rule 23 and is certifiable as a class action for the following reasons:

   a. The class includes over 175,000  members and is so large that joinder of all its members is impracticable.

   b. There are questions of law and fact common to the class because Defendants owed fiduciary duties to the Plan and to all participants and beneficiaries and took the actions alleged herein as to the Plan and not as to any individual participant. Thus, common questions of law and fact include the following, without limitation: Who are the fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a)?  Did the fiduciaries of the Plan breach their fiduciary duties to the Plan with respect to their management and allocation of Plan assets?  Did fiduciaries of the Plan engage in prohibited transactions with Plan assets?  Did fiduciaries of the Plan violate the anti-inurement provision of ERISA by using Plan assets for their own benefit?

16

What are the losses to the Plan resulting from each alleged breach of ERISA?  What Plan-wide equitable and other relief should the Court impose to remedy Defendants' alleged breaches?

c.  Plaintiff's claims are typical of the claims of the class because Plaintiff was a participant of the Plan during the Class Period and all participants in the Plan were harmed by the same alleged misconduct by Defendants.  Defendants have no unique defenses against Plaintiff that would interfere with Plaintiff's representation of the Class.

d.  Plaintiff is an adequate representative of the class because Plaintiff was a participant of the plan during the Class Period, has no interests that conflict with any other members of the class, is committed to the vigorous representation of the class, and has engaged experienced and competent attorneys to represent the class.

e.  Prosecution of separate actions for these breaches of fiduciary duties and prohibited transactions by individual participants and beneficiaries would create the risk of (A) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants with respect to their discharge of their fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a), and (B) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties, prohibited transactions, and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication or would substantially impair or impede those participants' and beneficiaries' ability to protect their interests. Any such recovery from Defendants will be paid to the Plan and any relief

will flow to all Class Members through their accounts in the Plan. Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B).

66.     The requirements of Fed. R. Civ. P. 23(b)(1)(A) are satisfied. Fiduciaries of ERISA-covered plans have a legal obligation to act consistently with respect to all similarly situated participants and to act in the best interests of the Plan and its participants. This action challenges whether Defendants acted consistently with their obligations under ERISA as to the Plan as a whole. As a result, prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the Plan.

67.     The requirements of Fed. R. Civ. P. 23(b)(1)(B) are also satisfied. Administration of an ERISA-covered plan requires that all similarly situated participants be treated the same. Resolving whether Defendants engaged in prohibited transactions with respect to the Plan and fulfilled their fiduciary obligations to the Plan would, as a practical matter, be dispositive of the interests of the other participants in the Plan even if they are not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Class.

68.     The requirements of Fed. R. Civ. P. 23(b)(2) are satisfied as to the Class because Defendants have acted and/or failed to act on grounds generally applicable to the Class, making declaratory and injunctive relief appropriate with respect to the Class as a whole. This action challenges whether Defendants engaged in prohibited transaction and breaches of fiduciary duties which would be violations of ERISA as to the Plan as a whole and as to the Class as a whole. The relief sought in this case primarily consists of declarations that Defendants engaged in prohibited transactions or breached their fiduciary duties. As ERISA is based on trust law, any monetary relief

18

consists of equitable monetary relief that would either flow directly by the declaratory or injunctive relief or flows as a necessary consequence of that relief.

69.     The requirements of Fed. R. Civ. P. 23(b)(3) are also satisfied. The common questions of law and fact concern whether Defendants engaged in prohibited transactions or breached their fiduciary duties to the Plan. As the members of the Class were participants in that Plan, their accounts were affected by those breaches and violations. Common questions related to liability will necessarily predominate over any individual questions precisely because Defendants duties and obligations were uniform to all participants and therefore all members of the Class. As relief and any recovery will be on behalf of the Plan, common questions as to remedies will likewise predominate over any individual issues.

70.     A class action is a superior method to other available methods for the fair and efficient adjudication of this action. As the claims generally are brought on behalf of the Plan, resolution of the issues in this litigation will be efficiently resolved in a single proceeding rather than multiple proceedings and each of those individual proceedings could seek recovery for the entire Plan. Class certification is a superior method of proceeding because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendants' duties to the Plan.

71.     The following factors set forth in Rule 23(b)(3) also support certification:

a.     The members of the Class have an interest in a unitary adjudication of the issues presented here for the reasons that this case should be certified under Rule 23(b)(1).

b.     No other litigation concerning this controversy has been filed by any other members of the Class.

c.  This District is the most desirable location for concentrating this litigation because (i) the Company does business in this District; and (ii) a significant number of Class members are located in this District.

d.  There are no anticipated difficulties in managing this case as a class action.

72.  Additionally, or in the alternative, this action may be certified as to particular issues under Rule 23(c)(4), including but not limited to Defendants' liability to the Class for their allegedly imprudent and disloyal conduct.

73.  Plaintiff is represented by counsel experienced in prosecuting ERISA class actions and with experience and expertise in litigation involving ERISA breaches of fiduciary duty and ERISA prohibited transactions.

## COUNT I
### BREACH OF FIDUCIARY DUTY OF LOYALTY
### (29 U.S.C. 1104(a)(1)(A))
### (against all Defendants)

74.  Plaintiff realleges and incorporates herein by reference each preceding paragraph of this Complaint as though fully set forth herein.

75.  At all relevant times, Defendants were named and/or de facto fiduciaries of the Plan within the meaning of ERISA insofar that they exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets.

76.  As fiduciaries of the Plan, Defendants were subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a).

77.  Pursuant to 29 U.S.C. § 1104(a)(1)(A), Defendants were required to discharge their duties to the Plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

20

78.    The duty of loyalty requires fiduciaries to act with an "eye single" to the interests of plan participants. *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000). "Perhaps the most fundamental duty of a [fiduciary] is that he [or she] must display…complete loyalty to the interests of the beneficiary and must exclude all selfish interest and all consideration of the interests of third persons." *Id*. at 224 (quotation marks and citations omitted).

79.    Defendants have continually breached this duty of loyalty with respect to their control and management of the Plan's assets throughout the Class Period by choosing to utilize the majority of forfeited funds in the Plan for the benefit of the Company rather than solely in the interest of the participants and beneficiaries.

80.    Instead of acting solely in the interest of Plan participants by utilizing the majority of forfeited funds as instructed by the Plan to reduce administrative expenses charged to their individual accounts, Defendants chose to use the majority of these Plan assets for the purpose of reducing its own future contributions to the Plan, thereby saving the Company millions of dollars each year at the expense of the Plan which received decreased Company contributions and its participants and beneficiaries who were forced to incur avoidable expense deductions to their individual accounts.

81.    A fiduciary acting solely in the interest of the Plan participants would have allocated additional forfeitures to pay administrative expenses as permitted by the Plan document.

82.    As a direct and proximate result of Defendants' fiduciary breaches described herein, the Plan suffered millions of dollars in losses.

83.    Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), Defendants are liable to restore to the Plan all losses caused by their breaches of fiduciary duties, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from such breaches. In addition,

Plaintiff is entitled to equitable relief and other appropriate relief for Defendants' breaches as set forth in the Prayer for Relief.

84.     Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

**COUNT II**
**BREACH OF FIDUCIARY DUTY OF PRUDENCE – USE OF FOREFEITED FUNDS**
**(29 U.S.C. 1104(a)(1)(B))**
**(against all Defendants)**

85.     Plaintiff realleges and incorporates herein by reference each preceding paragraph of this Complaint as though fully set forth herein.

86.     At all relevant times, Defendants were named and/or de facto fiduciaries of the Plan within the meaning of ERISA insofar that they exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets.

87.     As fiduciaries of the Plan, the Defendants were subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a).

88.     ERISA mandates that fiduciaries act with prudence in the disposition of Plan assets and selection and monitoring of investments, as well as in the monitoring and minimization of administrative expenses. 29 U.S.C. § 1104(a)(1)(B).

89.     Pursuant to 29 U.S.C. § 1104(a)(1)(B), Defendants were required to discharge their duties with respect to the Plan "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

90.     Defendants have continuously breached their duty of prudence under 29 U.S.C. § 1104(a)(1)(B) throughout the class period by declining to use the majority of forfeited funds in the Plan to eliminate the administrative expenses charged to participant accounts and instead using the majority of such Plan assets to reduce the Company's own contributions to the Plan.

91.     Defendants failed to engage in a reasoned and impartial decision-making process to determine that using the majority of the forfeited funds in the Plan to reduce the Company's own contribution expenses, as opposed to using them as instructed by the Plan to reduce the administrative expenses charged to participant accounts, was in the best interest of the Plan's participants or was prudent, and failed to consider whether participants would be better served by another use of these Plan assets after considering all relevant factors.

92.     By declining to use the majority of forfeited funds in the Plan to eliminate the administrative expenses charged to participant accounts, and instead using the majority of such Plan assets to reduce the Company's own contribution expenses, Defendants caused the Plan to receive fewer contributions that would otherwise have increased Plan assets and caused participants to incur expense deductions from their individual accounts that would otherwise have been covered in whole or in part by utilizing the forfeited funds to pay administrative expenses.

93.     As a direct and proximate result of Defendants' fiduciary breaches described herein, the Plan suffered injury and loss for which Defendants are personally liable and are subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of prudence.  In addition, Plaintiff is entitled to equitable relief and other appropriate relief for Defendants' breaches as set forth in the Prayer for Relief.

94.     Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

**COUNT III**
**BREACH OF FIDUCIARY DUTY OF PRUDENCE – FAILURE TO EXHAUST**
**(29 U.S.C. 1104(a)(1)(B))**
**(against all Defendants)**

95.     Plaintiff realleges and incorporates herein by reference each preceding paragraph of this Complaint as though fully set forth herein.

96.     At all relevant times, Defendants were named and/or de facto fiduciaries of the Plan within the meaning of ERISA insofar that they exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets.

97.     As fiduciaries of the Plan, the Defendants were subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a).

98.     ERISA mandates that fiduciaries act with prudence in the disposition of Plan assets. 29 U.S.C. § 1104(a)(1)(B).

99.     Pursuant to 29 U.S.C. § 1104(a)(1)(B), Defendants were required to discharge their duties with respect to the Plan "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

100.    Defendants have continuously breached their duty of prudence under 29 U.S.C. § 1104(a)(1)(B) throughout the Class Period by failing to promptly exhaust forfeited funds.

101.    In its Retirement News for Employers Newsletter from Spring 2010, the IRS published an article entitled "Fixing Common Plan Mistakes: Improper Forfeiture Suspense Accounts," discussing IRS Publication 4278-B (2010), p4278.pdf (irs.gov).

102.    In pertinent part, that article states: "Forfeitures must be used or allocated in the plan year incurred. The Code does not authorize forfeiture suspense accounts to hold unallocated monies beyond the plan year in which they arise. Revenue Ruling 80-155 states that a defined contribution plan will not be qualified unless all funds are allocated to participants' accounts in accordance with a definite formula defined in the plan. This would preclude a plan from carrying over plan forfeitures to subsequent plan years, as doing so would defy the rule requiring all monies in a defined contribution plan to be allocated annually to plan participants."

103.    The same article states that "[t]he plan document's terms should have provisions detailing how and when a plan will exhaust plan forfeitures. A plan's failure to use forfeitures in a timely manner denies plan participants additional benefits or reduced administrative expenses."

104.    The IRS concludes that "this failure can be corrected by reallocating all forfeitures in the plan's forfeiture suspense account to all plan participants who should have received them had the forfeitures been allocated on time."

105.    Consequently, Defendants were required to monitor plan forfeitures and allocate them by the end of the year. Defendants did not have adequate systems in place as demonstrated by a year-end balance in the forfeiture account during each year from 2019 to 2023.

106.    Defendants violated their fiduciary duty of prudence by not using their forfeiture account as instructed by IRS and the Plan, thereby causing Plaintiff and other Plan members to be denied additional benefits and reduced administrative expenses.

107.    As a direct and proximate result of Defendants' fiduciary breaches described herein, the Plan suffered injury and loss for which Defendants are personally liable and are subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the restoration of all plan losses resulting from Defendants' breach of their duty of prudence.  In addition, Plaintiff is entitled to equitable relief and other appropriate relief for Defendants' breaches as set forth in the Prayer for Relief.

108.    Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

## COUNT IV
### BREACH OF ERISA'S ANTI-INUREMENT PROVISION
### (29 U.S.C. 1103(c)(1))
### (against all Defendants)

109.    Plaintiff realleges and incorporates herein by reference each preceding paragraph of this Complaint as though fully set forth herein.

110.    Pursuant to 29 U.S.C. § 1103(c)(1), "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."

111.    The balance in a participant's accounts that a participant forfeits when incurring a break in service prior to full vesting of the Company's contributions to the participant's account is an asset of the Plan.

112.    By electing to utilize the majority of these Plan assets as a substitute for the Company's own future contributions to the Plan, thereby saving the Company millions of dollars in contribution expenses, Defendants caused the assets of the plan to inure to the benefit of the employer and failed to defray reasonable expenses of the plan in violation of 29 U.S.C. 1103(c)(1).

113.    Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from violation of ERISA's anti-inurement provision as alleged in this claim and to restore to the Plan all profits secured through their use of Plan assets. In addition, Plaintiff is entitled to equitable relief and other appropriate relief for Defendants' breaches as set forth in the Prayer for Relief.

114.    Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

**COUNT V**
**PROHIBITED TRANSACTIONS**
**(29 U.S.C. § 1106(a)(1))**
**(against all Defendants)**

115.    Plaintiff realleges and incorporates herein by reference each preceding paragraph of this Complaint as though fully set forth herein.

116.    29 U.S.C. § 1106(a)(1) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . exchange . . . of any property between the plan and a party in interest . . . or use by or for the benefit of a party in interest, of any assets of the plan."

117.    29 U.S.C. § 1002(14), defines a "party in interest" to include (A) "any fiduciary . . . of such employee benefit plan;" (B) "a person providing services to such plan;" (C) "an employer any of whose employees are covered by such plan," and "(H) any employee, officer, or director of such employer."

118.    ERISA § 3(9), 29 U.S.C. § 1002(9) defines "person" as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization."

119.    Defendants are or were both a fiduciary and a party-in-interest subject to ERISA § 406(a)(1)(C), (D).

120.    By electing to use the majority of forfeited funds in the Plan as a substitute for future employer contributions to the Plan, and thereby saving the Company millions of dollars in contribution expenses, Defendants caused the Plan to engage in transactions that constituted a direct or indirect exchange of existing Plan assets for future employer contributions and/or a use of Plan assets by or for the benefit of a party in interest.

121.    As a result of these prohibited transactions, Defendants caused the Plan to suffer losses in the amount of the Plan assets that were substituted for future employer contributions and the lost investment returns on those assets.

122.    Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited transactions alleged in this claim, to reverse and/or correct the prohibited transactions, to restore to the Plan all assets. In addition, Plaintiff is entitled to equitable relief and other appropriate relief for Defendants' breaches as set forth in the Prayer for Relief.

123.    Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

## COUNT VI
## PROHIBITED TRANSACTIONS
### (29 U.S.C. § 1106(b)(1))
### (against all Defendants)

124.    Plaintiff realleges and incorporates herein by reference each preceding paragraph of this Complaint as though fully set forth herein.

125.    29 U.S.C. § 1106(b), provides: "A fiduciary with respect to a plan shall not—(1) deal with the assets of the plan in his own interest or for his own account, (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

126.    Each of Defendants is or was both a fiduciary and a party-in-interest subject to ERISA § 406(b).

127.    Defendants violated this prohibition in their management and control of forfeiture funds in the Plan. By utilizing the majority of these Plan assets as a substitute for future employer contributions to the Plan, thereby saving the Company millions of dollars in contribution expenses, Defendants dealt with the assets of the Plan in their own interest and for their own account.

128.    As a result of this prohibited conduct, Defendants caused the Plan to suffer losses in the amount of the Plan assets that were substituted for future employer contributions and the lost investment returns on those assets.

129.    Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited transactions alleged in this claim, to reverse and/or correct the prohibited transactions, to restore to the Plan all assets. In addition, Plaintiff is entitled to equitable relief and other appropriate relief for Defendants' breaches as set forth in the Prayer for Relief.

130.    Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

## COUNT VII
### Failure to Act in Accordance with the Governing Plan Documents
### (ERISA, 29 U.S.C. § 1104(a)(1)(D))

131.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

132.    At all relevant times during the Class Period, Defendants acted as fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A) by exercising authority and control with respect to the management of the Plan and its assets.

133.    As fiduciaries, Defendants were required to act in accordance with the documents and instruments governing the Plan, so long as those documents and instruments were consistent with ERISA.

134. During the Class Period, the Plan instructed to use forfeitures *first* to pay administrative expenses and *then* to reduce employer contributions.

135. Nonetheless, during the Class Period the Committee consistently chose to prioritize offsetting employer contributions prior to allocating any forfeited funds to administrative expenses.

136. As a consequence of Defendants not following their Plan documents in allocating forfeitures, the Plan suffered millions of dollars in losses. Had Defendants complied with their fiduciary obligations, and followed the Plan document, Plan participants would not have suffered these losses, and Plan participants would have had more money available to them for their retirement.

137. Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), Defendants are liable to restore to the Plan all losses caused. In addition, Plaintiff is entitled to equitable relief and other appropriate relief as set forth in the Prayer for Relief.

138. Each Defendant also participated in the breach of the other Defendants, knowing that such acts were a breach, and enabled the other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties. Each Defendant knew of the breach by the other Defendants yet failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary duties under 29 U.S.C. § 1105(a).

### COUNT VIII
**Failure to Monitor**
**(29 U.S.C. § 1105(a))**
**(against the Company and the Board)**

139. Plaintiff realleges and incorporates herein by reference each preceding paragraphs of this Complaint as though fully set forth herein.

140.    The Company, through the Board and its Members, oversaw the overall governance of the Plan and had the authority to delegate fiduciary responsibilities.

141.    The Company created the Committee to assist in the management of the Plan and delegated to the Committees authority and discretion to direct the trustee with respect to the crediting and distribution of the Plan assets.

142.    The Company, through the Board and its Members, had the authority to appoint and remove members of the Committee, and the duty to monitor the Committee and were aware that the Committee Defendants had critical responsibilities as fiduciaries of the Plan.

143.    In light of this authority, the Company and the Board Defendants had a duty to monitor the Committee Defendants to ensure that the Committee Defendants were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that the Committee Defendants were not fulfilling those duties.

144.    A monitoring fiduciary must ensure that the person to whom it delegated fiduciary duties is performing its fiduciary obligations and must take prompt and effective action to protect the plan and participants when the delegate fails to properly discharge its duties. To the extent any of the fiduciary responsibilities of the Company were delegated to another fiduciary, the Company's monitoring duties included an obligation to ensure that any delegated tasks or responsibilities were being performed in accordance with ERISA's fiduciary standards.

145.    The Company breached its fiduciary monitoring standard with respect to the Committee by, among other things, failing to monitor the Committee's management and use of forfeited funds in the Plan and by failing to take steps to ensure that the Committees were discharging their duties with respect to Plan assets for the sole benefit of Plan participants and beneficiaries.

146.     As a direct result of the breach of its fiduciary duty to monitor, the Plan suffered losses. Had Defendants complied with their fiduciary obligations, the Plan would not have suffered these losses, and Plan participants would have had more money available to them for their retirement.

147.     Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), the Defendants are liable to restore to the Plan all losses caused by their failure to adequately monitor the Committee Defendants. In addition, Plaintiff is entitled to equitable relief and other appropriate relief as set forth in the Prayer for Relief.

**COUNT IX**
**Failure to Furnish Requested Documents**
**(against the Company and the Board)**

148.     Plaintiff realleges and incorporates herein by reference each preceding paragraphs of this Complaint as though fully set forth herein.

149.     Plaintiff brings this claim in her individual capacity against CommonSpirit.

150.     29 U.S.C. § 1024(b)(4) provides that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."

151.     29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1 together provide that an administrator who fails to furnish documents requested by a participant under 29 U.S.C. § 1024(b)(4) within 30 days may, in the Court's discretion, be personally liable to the participant in an amount of up to $110 a day from the date of such failure.

152.     Plaintiff mailed a written request for a copy of:

**Milberg.**
COLEMAN BRYSON PHILLIPS GROSSMAN

1. The governing plan prototype/master document and related adoption agreements and amendments from January 1, 2019 – June 15, 2025.
2. The summary plan document.
3. The current written investment policy or guidelines.
4. All documents regarding costs, either direct or indirect, charged to the Plan by the sponsor, its affiliates or subsidiaries and/or any entity in which the sponsor has ownership interest, including but not limited to 408b2 and 404a5 fee disclosure notices.
5. The contract/agreement with the recordkeeper.
6. The current trust agreement with all amendments.
7. The most recent Summary Annual Report.
8. All quarterly participant statements for Participant for the period January 1, 2019 – December 1, 2024.

153.    Plaintiff's request was sent by letter via fedex under the tracking id: 883295848434 and delivered to CommonSpirit, at 3900 Olympic Boulevard, Suite 300, Erlanger, KY 41018-1099, the address provided on their annual 5500 form, on August 6, 2025.

154.    On September 25, 2025, Plaintiff's counsel, having not received a response within the required 30 days, tried to call CommonSpirit's customer service line to reach the plan administrator and advise them of their failure to respond. Plaintiff's counsel reached an agent and asked to speak to the form 5500 denoted plan administrator, Elizabeth Meckenstock. Plaintiff's counsel was informed that her contact information is not available under any circumstances. CommonSpirit's agent assured Plaintiff's counsel message would be relayed to the Plan Administrator.

155.    On October 2, 2025, Plaintiff's counsel tried to call CommonSpirit Health's office of the general counsel at 303-804-8166 in attempt to avoid litigation. After being provided several options by a robot, Plaintiff's counsel was advised by the robot to call back later with no ability to leave a message.

156.    To date, CommonSpirit has not complied with Plaintiff's request and has not contacted Plaintiff's counsel.

157.     Accordingly, CommonSpirit is in violation of 29 U.S.C. § 1024(b)(4) and is personally liable to Plaintiff in an amount of up to $110 a day starting on the 31th day after receiving Plaintiff's request.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendants on all claims, and requests that the Court order or award the following relief:

A.  Find and adjudge that the Defendants have breached their fiduciary duties and engaged in prohibited conduct and transactions as described above;

B.  Find and adjudge that the Defendants are personally liable to make good to the Plan the losses to the Plan resulting from each violation of ERISA described above, and to otherwise restore the Plan to the position it would have occupied but for the breaches;

C.  Order the disgorgement of all assets and profits secured by Defendants as a result of each violation of ERISA described above;

D.  Impose a constructive trust over these profits;

E.  Determine the method by which Plan losses under 29 U.S.C. § 1109 should be calculated;

F.  Order Defendants to provide all accounting necessary to determine the amounts Defendants must make good to the Plan under 29 U.S.C. § 1109(a);

G.  Order Defendants to make good to the Plan the losses resulting from each breach of ERISA and to restore to the Plan any profits resulting from each breach of ERISA;

H.  Apportion all amounts recovered for the Plan among the Plaintiff and the Class;

I.  Order that any amount to be paid to the Plan and/or accounts of Plaintiff and Class members can be satisfied by using or transferring any breaching fiduciary's account (or the proceeds of that account) to the extent of that fiduciary's liability;

J.  Remove the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations;

K.  Impose surcharge against Defendants and in favor of the Plan all amounts involved in any transactions which such accounting reveals were improper, excessive and/or in violation of ERISA;

L.  Certify this action as a class action pursuant to Fed. R. Civ. P. 23, appoint the Plaintiff as class representative, and appoint the law firms of Milberg Coleman Bryson Phillips Grossman PLLC and Edelsberg Law as class counsel;

M.  Award to Plaintiff and the class their attorneys' fees and costs under 29 U.S.C. § 1132(g)(1), or order the payment of reasonable fees and expenses to Plaintiff's counsel on the basis of the common benefit or common fund doctrine (or other applicable law) out of any money or benefit recovered for the Class in this action;

N.  Award pre-judgement and post-judgment interest; and

O.  Award any other such relief the Court determines Plaintiff and the Class are entitled to pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a).

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial of these claims by jury to the extent authorized by law.

Dated: October 8, 2025

*/s/ Joseph M. Lyon*
**THE LYON FIRM, ALC**
Joseph M. Lyon
2754 Erie Ave.
Cincinnati, OH 45208
Telephone: (513) 381-2333
Email: jlyon@thelyonfirm.com

Gary M. Klinger*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
Email: gklinger@milberg.com

Alexander Rudenco*
Arlene Boruchowitz*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
800 S. Gay St., Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
arudenco@milberg.com
aboruchowitz@milberg.com

Gabriel Mandler*
Omer Kremer*
**EDELSBERG LAW**
20900 NE 30th Ave
Aventura, FL 33180
Tel: (305) 975-3320
scott@edelsberglaw.com
gabriel@edelsberglaw.com
omer@edelsberglaw.com

*Pro Hac Vice Application Forthcoming*

*Counsel for Plaintiff and the Prospective
Class*